Mulford MEADOWS, Petitioner,

v.

Otto C. BOLES, Warden of the West
Virginia State Penitentiary,
Respondent.

Civ. A. No. 544–E.

United States District Court
N. D. West Virginia.

June 22, 1966.

Henry K. Higginbotham (Court appointed), Elkins, W. Va., for petitioner.

C. Donald Robertson, Atty. Gen. of West Virginia, George H. Mitchell, Asst. Atty. Gen. of West Virginia, Charleston, W. Va., for respondent.

MEMORANDUM

MAXWELL, Chief Judge.

Mulford Meadows is currently in the custody of the Respondent, serving a life

sentence as a habitual offender under West Virginia Code, Chapter 61, Article 11, Section 19 (Michie's ed. 1961, section 6131).

The facts leading to the imposition of this life sentence are that on October 5, 1962, Meadows was found guilty of rape, by a Boone County, West Virginia, jury. Thereafter, but before being sentenced on the jury's guilty verdict, the Prosecuting Attorney of Boone County filed an information charging that this conviction was his third felony conviction and that he was subject to sentencing under the recidivist statute. Meadows was accordingly sentenced by the Circuit Court of Boone County, West Virginia, to life imprisonment, on October 5, 1962.

Meadows, who has not been sentenced for the rape conviction, did not appeal his recidivist sentence, but his attorney did make a motion to set aside the sentence because of the trial court's failure to follow the procedure outlined in the above cited West Virginia Code section. That statute, in applicable part, reads as follows:

It shall be the duty of the prosecuting attorney when he has knowledge of former sentence or sentences to the penitentiary of any person convicted of an offense punishable by confinement in the penitentiary to give information thereof to the court immediately upon conviction and before sentence. Said court shall, before expiration of the term at which such person was convicted, cause such person or prisoner to be brought before it, and upon an information filed by the prosecuting attorney, setting forth the records of conviction and sentence, or convictions and sentences, as the case may be, and alleging the identity of the prisoner with the person named in each, shall require the prisoner to say whether he is the same person or not. If he says he is not, or remains silent, his plea, or the fact of his silence, shall be entered of record, and a jury shall be impanelled to inquire whether the prisoner is the same person mentioned in the several records. If the jury finds that he is not the same person, he shall be sentenced upon the charge of which he was convicted as provided by law; but if they find that he is the same, or after being duly cautioned if he acknowledged in open court that he is the same person, the court shall sentence him to such further confinement as is prescribed by section eighteen (§ 6130) of this article on a second or third conviction as the case may be.

The record is silent as to the disposition of this motion.

In 1965 Meadows filed an original petition for habeas corpus with the West Virginia Supreme Court of Appeals, alleging that he had not been "duly cautioned" when called upon to answer to the recidivist charges and that therefore his recidivist sentence was void. The state court summarily dismissed the writ, two judges expressing a contrary opinion.

On December 1, 1965, Meadows petitioned this Court in forma pauperis, for federal habeas corpus relief. The Court granted permission to so proceed and ordered the Respondent to show cause. The Respondent's answer, filed on December 13, 1965, was a general denial. It also contained a motion to dismiss for failure to exhaust available state remedies. The Court, on January 12, 1966, sustained the motion to dismiss on the basis of its opinion in Miller v. Boles, 248 F.Supp. 49 (N.D.W.Va.1965). In answer to Meadows' request for an appeal, the Court permitted him to proceed on appeal in forma pauperis, but denied him a certificate of probable cause.

In that posture, his habeas corpus application was presented to the Fourth Circuit Court of Appeals. While there, however, a question of proof, which might have affected the application of Miller, arose. This question is later discussed.

A trial court's failure to "duly caution" a defendant at the time of his recidivist hearing as to whether he was a habitual criminal is susceptible of two grounds for habeas corpus.

■ First, it would be a jurisdictional error, which both West Virginia, State ex rel. Browning v. Tucker, 142 W.Va. 830, 98 S.E.2d 740 (1957); see State ex rel. Mounts v. Boles, 147 W.Va. 152, 126 S.E.2d 393 (1962); State ex rel. Cox v. Boles, 146 W.Va. 392, 120 S.E.2d 707 (1961), and federal courts, see Chewning v. Cunningham, 368 U.S. 443, 82 S.Ct. 498, 7 L.Ed.2d 442 (1962); Oyler v. Boles, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed. 2d 446 (1962); Reynolds v. Cochran, 365 U.S. 525, 81 S.Ct. 723, 5 L.Ed.2d 754 (1961); Chandler v. Fretag, 348 U.S. 3, 75 S.Ct. 1, 99 L.Ed. 4 (1954); Spry v. Boles, 299 F.2d 332 (4th Cir. 1962); Beckett v. Boles, 218 F.Supp. 692 (N.D. W.Va.1963), recognize as grounds for voiding the sentence by granting a writ of habeas corpus.

■ Secondly, a trial court's failure to "duly caution" would fail to satisfy the fundamental fairness requirements of due process under the Fourteenth Amendment and would, of course, merit federal habeas corpus relief. Hooker v. Boles, 346 F.2d 285 (4th Cir. 1965), at 287.

The main issue in such habeas corpus proceedings, as it has evolved in the Fourth Circuit Court of Appeals, is whether the trial judge has clearly informed the defendant of (1) his right to remain silent, rather than admit his identification with the individual who was convicted for the prior felonies; (2) the consequences of an admission that he was in fact thrice convicted; and (3) the right to have a jury decide the question. Mounts v. Boles, 326 F.2d 186 (4th Cir. 1963).

Under the opinions of the Fourth Circuit, there are several ways to prove or disprove that the trial judge performed this duty.

A transcript of the entire proceedings, recording verbatim the statements made by both the judge and the defendant, may clearly disclose that a sufficient explanation or warning was given. Carroll v. Boles, 347 F.2d 96 (4th Cir. 1965), at 98.

Without the benefit of an official transcript, the court may take notice of the court order, or minutes of the clerk summarizing the proceedings in chronological order, but these conclusory statements are of such an ambiguous nature that, standing alone, they will not refute the contrary testimony that there was no compliance with the statute's mandates. Harris v. Boles, 349 F.2d 607 (4th Cir. 1965), at 609. Moreover, when there is no transcript and the minutes are silent on the question of whether the defendant was "duly cautioned" by the judge, the Fourth Circuit Court of Appeals has held that the conflicting testimony by witnesses at the proceeding as to whether the defendant was "duly cautioned" would be resolved in favor of the defendant because of the fallibility of human memory. Carroll v. Boles, supra at 347 F.2d 98.

In Meadows' case, it was not clear, when the petition was first filed, whether a transcript of the recidivist proceedings was available. The Petitioner had submitted, along with his petition, what purports to be an attested copy of the minutes and order entered by the clerk in the recidivist hearing. Nowhere in that order is there any mention of the trial judge's warning to Meadows.

Therefore, it seemed that Meadows might easily have prevailed because of the presumptions which *Carroll*, supra, articulates, by testifying that he was not "duly cautioned." If so, it would seem to have followed that Meadows might well have exhausted his available state remedies under the purview of *Miller*.

For this reason, and in order to clarify further the application of *Miller*, the Court desires to reconsider Meadows' petition on remand.

Consequently, on March 23, 1966, the Court ordered the Respondent to submit an answer supplementing his original answer of December 13, 1965. The supplemental answer was (1) to specify whether a transcript of the Petitioner's recidivist proceedings was available, and if

one was available, to submit a copy to the Court, and (2) to specify whether the Petitioner was currently serving a sentence for rape or as a habitual offender under the West Virginia recidivist statute, and if the latter, whether the Petitioner had ever been duly sentenced for his 1962 rape conviction.

The Respondent answered on April 25, 1966, advising the Court that a transcript of Meadows' recidivist hearing was available. The Respondent also submitted an attested copy of the transcript. That copy was attached to the Respondent's answer and is now a part of the record.

This Court observed, after having read the transcript copy of the recidivist hearing, that the Boone County Circuit Court made available to Meadows' court appointed counsel the official records concerning the information showing three prior felony convictions; that after a short conference with his counsel, Meadows admitted being the same person who had been convicted and sentenced for felonies on August 15, 1931, and on June 11, 1951; that thereafter, and prior to accepting the admission, the Boone County Circuit Court specifically cautioned Meadows that his admission would compel a life sentence; and that Meadows replied that he understood what would happen. These facts are absolutely clear from the record.

■ Therefore, the question now before this Court is whether, as a result of the above steps, Meadows was "duly cautioned," so as to meet all jurisdictional requirements. Spry v. Boles, supra 299 F.2d 332; State ex rel. Beckett v. Boles, W.Va., 138 S.E.2d 851 (1964); State ex rel. Mounts v. Boles, supra 147 W.Va. 152, 126 S.E.2d 393.

This Court must now conclude that he was not, even though he seems to have been made aware of the nature of the proceedings and the consequences of his admission. This Court's conclusion is based on the fact that Meadows was not told that he could remain silent and receive a jury trial on the matter of identification.

One of the most recent Fourth Circuit Court of Appeals cases dealing with the West Virginia recidivist statute is Hooker v. Boles, supra 346 F.2d 285, wherein it was held that a defendant is not "duly cautioned" where only his attorney, and not the state trial judge, has fully and plainly informed him of the nature of the recidivist proceeding and of his right to remain silent. It is, the Fourth Circuit Court of Appeals has held, the trial court itself which must "duly caution," and if the trial court fails to do so, the recidivist sentence is void.

In Mounts v. Boles, supra 326 F.2d 186, 188, a case involving a habeas corpus applicant serving a life sentence for recidivism, the Fourth Circuit Court of Appeals previously explained what is Constitutionally required by "due caution" when it stated the following:

> To satisfy the minimum requirements of fundamental fairness under the circumstances the prisoner should have been told of his right to admit, or to deny, or remain silent and have the issue of his identity submitted to a jury.

The import of this language is clear. This Court, despite its own conclusions, is required to hold that the failure of the state trial court to advise Meadows, in his complained of recidivist proceedings, of his "right to admit, or to deny, or remain silent and have the issue to his identity submitted to a jury," deprived Meadows of the fundamental fairness to which he was entitled.

■ This Court's present holding is more than mere deference to a higher judicial body. In this case, it may have been true, as it seems to have been in *Hooker*, that Meadows was advised by his attorney of his right to a jury trial on the issue of identification. It is also true that justice should not be reduced to a matter of semantics. But what in this case might appear to be a tenuous insistence on words, could, in another case, save an unsuspecting defendant from

failing to assert his right to a jury trial. As was articulated in *Hooker*, it cannot be presumed that Meadows' attorney undertook the obligations which rested with the trial court.

While this Court is bound by the West Virginia Supreme Court's interpretation of the jurisdictional requirements of the recidivist statute, it appears that the precise point, now before this Court, has never been ruled upon by the West Virginia Court of Appeals. Jurisdictional requirements are not involved in this Court's present ruling, however, because this Court's holding is that the procedure followed in the state trial court in this case did not comply with the requirements of due process under the Fourteenth Amendment. Mounts v. Boles, supra 326 F.2d 186, 188.

In closing, the Court notes that Meadows' petition must now be viewed in a posture entirely different from that present when the petition was originally filed. Since the transcript is available, there obviously is no longer a need for an evidentiary hearing, and since there now are no real questions of fact, the comity problems, with which *Miller* was chiefly concerned, do not exist. In other words, since Meadows has already presented the same contention to the West Virginia Supreme Court of Appeals, there is no reason why the merits of Meadows' petition cannot be finally determined.

The Court further observes that the Respondent's supplemental answer of April 25, 1966, has revealed that Meadows was never sentenced for the 1962 rape conviction. Therefore, the State will be given until the end of the September, 1966, Term of the Circuit Court of Boone County, West Virginia, the next regular term of said court, within which to sentence Meadows for his 1962 rape conviction and notify this Court of its action. If the State fails to do so, Meadows will be entitled to immediate release from custody.

An order will be so entered.